UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SUSANNA CHENETTE,
    Plaintiff,

v.

UNITED STATES OF AMERICA,
    Defendant.

Case No. 19-cv-02998-JCS

**ORDER DENYING MOTION TO DISMISS AND VACATING OCTOBER 25, 2019 MOTION HEARING**

Re: Dkt. No. 11

## I. INTRODUCTION

Plaintiff Susanna Chenette brings this action against Defendant the United States seeking a tax refund pursuant to 26 U.S.C. § 7422. The United States does not dispute that Chenette overpaid her taxes. Nonetheless, it brings a Motion to Dismiss ("Motion") in which it seeks dismissal of the Complaint on the basis that the claim that Plaintiff filed with the Internal Revenue Service was untimely and therefore there is no subject matter jurisdiction over this action. The Court finds that the Motion is suitable for determination without oral argument and therefore **vacates the motion hearing scheduled for October 25, 2019 at 9:30 a.m. The Case Management Conference set for the same date will remain on calendar but will be conducted at 2:00 p.m. rather than 9:30 a.m. as originally scheduled.** For the reasons stated below, the Motion is DENIED.[1]

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).

## II. BACKGROUND

### A. Allegations in Complaint

Chenette's claim for a tax refund in this case relates to taxes she paid in connection with sales of stock in 2012. Complaint ¶¶ 18-21. In particular, she alleges that she sold some stock that had been given to her by her grandfather and that when she did so, she took a loss on many of the shares. *Id.* ¶ 18. She alleges that she kept a detailed spreadsheet listing "the stock certificate numbers, her exact bases in all the shares, details of all splits, some price history, and gifting dates for all of the stock sold." *Id*. & Ex. 6 (Stock Spreadsheet). She also kept "detailed personal accountings and updated her spreadsheet to identify which stock she sold at the time she filed her taxes." *Id*. ¶ 21. Chenette alleges that she reported the loss she took and the stock sale to the IRS properly in her 2012 tax return. *Id. ¶* 22.

Chenette alleges that in September 2014, she received a letter from the IRS ("the September 2014 Letter") accusing her of underreporting income for the tax period that ended in 2012 and demanding payment in the amount of $24,384.00, which included almost $5,000 in penalties. *Id.* ¶¶ 2, 22. According to the Complaint, the September 2014 Letter did not actually make changes to Chenette's account but merely proposed the additional assessment. *Id. ¶* 23. The allegedly underreported taxes were not formally assessed until December 8, 2014. Complaint ¶ 2. With interest, the assessment was $18,000.21. *Id*.; *see also* Complaint, Ex. 1 (IRS Account Transcript for Chenette for tax period ending December 31, 2012 ("IRS Account"), showing that on December 8, 2014 Chenette was assessed $17,219 in additional taxes and late payment interest in the amount of $781.21 ("December 8 Assessment")).

In the meantime, on October 14, 2014, Chenette responded to the September 2014 Letter informing her of the proposed assessment with a letter to the IRS ("October 2014 Letter") in which she "politely and respectfully explain[ed] her tax calculations, complete with detailed spreadsheets and equations." Complaint ¶ 24 & Ex. 3 (October 2014 Letter); *see also* United States' Motion to Dismiss at 2 (stating that Chenette's October 2014 Letter "provide[d] a detailed explanation as to why Ms. Chenette did not agree with the proposed additions to her federal income tax liability"). Chenette signed the October 2014 Letter under penalty of perjury.

Complaint, Ex. 3. Chenette further alleges that "[b]ecause of the threatening nature of the large sum of money the IRS was seeking in its September 2014 Letter, including penalties and interest, [she] also submitted a sum of money ($19,445.00) to stop the accrual of fines, interest, or penalties." *Id*. ¶ 25. Chenette states in the October 2014 Letter that her check remitting this amount was enclosed with the letter. Complaint, Ex. 3. An entry dated October 14, 2014 on Chenette's IRS Account describes this sum as "[a]dvance payment of tax owed" and it is reflected as a credit of $19,445. *Id*. ¶ 26 & Ex. 1. On December 8, 2014 the IRS used the credit to satisfy the December 8 Assessment. *Id.* ¶ 3.

Chenette alleges that on December 22, 2014 the IRS "internally reviewed [the] additional assessment and confirmed the IRS's position." *Id*. ¶ 29 & Ex. 1. On the same date, the IRS issued a refund in the amount of $1,450.68 on Chenette's advance payment. *Id*. ¶ 30. Chenette alleges that in January 2015 she received a notice that the IRS had "processed her October 2014 letter and adjusted her tax liability[,]" resulting in the $1,450.68 refund she had been sent on December 22, 2014. *Id. ¶* 30 & Ex. 1. According to Chenette, this was the first time she was given notice that the IRS had increased her tax liability for 2012. *Id*. ¶ 31.

Subsequently, Chenette alleges, she continued to challenge the IRS's calculation of her 2012 tax liability. *Id*. ¶ 33. She alleges that "[a]lthough she had no new information to provide, [she] decided to submit the information in a different form." *Id*. In particular, "as the two-year statute of limitations to request a refund of her overpayment approached, Ms. Chenette decided to file an amended return for 2012." *Id.* ¶ 34. She alleges she filed a 1040x for 2012 on November 11, 2016. *Id.* ¶ 35. She further alleges that as an attachment to this filing she "submitted *the same information* she submitted in her October 2014 Letter explaining her bases calculations and providing the Stock Spreadsheet." *Id.* (emphasis in Complaint) & Exhibit 2. In February 2017, the IRS requested additional information in response to Chenette's 1040x, asking her to complete Form 8949. *Id*. ¶ 36. Chenette completed the form and returned it to the IRS around February 27, 2017. *Id. ¶* 37. Form 8949 is a "formal spreadsheet" that contained the same information Chenette had provided in her October 2014 Letter and her 1040x. *Id*.

On June 12, 2017, the IRS notified Chenette that it had decreased her tax liability and that

3

the IRS owed her a refund of $18,000.12. *Id*. ¶ 38 & Ex. 4 (June 12, 2017 notice). However, Chenette never received a refund, despite formal protests and repeated attempts to obtain the refund. *Id*. ¶¶ 41-61. Rather, the IRS refused to issue the refund and ultimately told Chenette after almost two years of failing to respond to her requests that her November 2016 claim for a refund was untimely under 26 U.S.C. § 6511(a) and 26 U.S.C. § 7422(d). *Id*. ¶ 58.

In her Complaint, filed on May 30, 2019, Chenette asserts a claim for a refund pursuant to 26 U.S.C. § 7422.

### B. Statutory Framework Governing Claims for a Tax Refund

Under the Tax Code, a civil action for a tax refund may not be brought until the taxpayer has filed an administrative claim with the Internal Revenue Service ("IRS"). *See* 26 U.S.C. § 7422(a) (no civil action for tax refund may be maintained "until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof."). Further, in order for the civil action to be considered timely, the administrative claim must have been filed with the IRS within the time period allowed for administrative claims. *Omohundro v. United States*, 300 F.3d 1065, 1067 (9th Cir. 2002) ("A taxpayer's failure to file an administrative claim within the time periods imposed by statute divests the district court of jurisdiction over an action for a refund or credit"). That time period is set forth in 26 U.S.C. § 6511(a), which provides that the administrative claim must be filed "within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid."

When a taxpayer remits funds to the IRS, it may or may not be considered a payment for the purposes of Section 6511(a). In particular, in some situations, funds that are remitted to the IRS are considered a deposit rather than a payment and therefore do not start the running of the two-year limitation period set forth in Section 6511(a). Section 6603 of the Tax Code authorizes taxpayers to make deposits "to suspend running of interest on potential underpayments." That section provides, in relevant part, as follows:

(a) **Authority to make deposits other than as payment of tax.**--A

4

> taxpayer may make a cash deposit with the Secretary which may be used by the Secretary to pay any tax imposed under subtitle A or B or chapter 41, 42, 43, or 44 which has not been assessed at the time of the deposit. Such a deposit shall be made in such manner as the Secretary shall prescribe.
>
> (b) **No interest imposed**.--To the extent that such deposit is used by the Secretary to pay tax, for purposes of section 6601 (relating to interest on underpayments), the tax shall be treated as paid when the deposit is made.
>
> (c) **Return of deposit**.--Except in a case where the Secretary determines that collection of tax is in jeopardy, the Secretary shall return to the taxpayer any amount of the deposit (to the extent not used for a payment of tax) which the taxpayer requests in writing.

26 U.S.C. § 6603.

The IRS has promulgated Revenue Procedure 2005-18, which sets forth certain rules and procedures which govern whether a taxpayer's remittance will be considered a deposit or a payment. Among other things, it provides that "[a] taxpayer may make a deposit under section 6603 by remitting to the Internal Revenue Service Center at which the taxpayer is required to file its return, or to the appropriate office at which the taxpayer's return is under examination, a check or a money order accompanied by a written statement designating the remittance as a deposit." Rev. Proc. 2005-18 § 4.01(1). In subsequent sections, the Revenue Procedure addresses whether an "undesignated remittance" will be considered to be a payment or a deposit in various scenarios. *Id*. §§ 4.03 – 4.05.

### C. The Motion

In the Motion, the United States contends Chenette's claim must be dismissed for lack of subject matter jurisdiction because the remittance she sent to the IRS on October 14, 2014 was a payment and therefore the limitations period for filing an administrative claim expired two years from that date, that is, on October 14, 2016. As Chenette did not file a formal claim until November 2016, the United States asserts, her administrative claim was untimely.[2] In making this

---

[2] The Court notes that while Chenette alleges she filed a formal administrative claim on or about November 11, 2016, *see* Complaint ¶ 35, the United States has submitted a Form 4340 Certificate of Assessments, Payments, and Other Specified Matters that appears to reflect that the claim was submitted on November 14, 2016. *See* Watson Decl., Ex. 1. This discrepancy has no bearing on the argument of the United States that Chenette's claim was untimely as both dates would fall outside of the two-year limitation period if the October 14, 2014 remittance was a payment rather

5

argument, the United States relies heavily on the fact (which is undisputed) that Chenette did not expressly designate the remittance she sent to the IRS as a deposit. The United States argues that under Ninth Circuit authority, a remittance that is not designated as a deposit is properly considered a payment rather than a deposit.

Chenette challenges the United States' characterization of the governing case law, arguing that it improperly relies on Ninth Circuit cases that involve late payers rather than audits, mischaracterizes or omits relevant Circuit Court and Supreme Court authority addressing remittances in audit situations, selectively cites its own Revenue Procedure, and ignores key facts alleged in the Complaint. She argues that the question of whether her remittance was a payment or a deposit should be considered under a "facts and circumstances test" that directs courts to consider the taxpayer's intent when making the remittance, how the remittance was treated by the IRS when it was received and when the tax liability to which the remittance was applied was defined. Under that test, she argues that her remittance should be considered a deposit. Alternatively, she argues that to the extent that the United States' characterization of the facts in its Motion to Dismiss diverges in significant respect from the allegations in the Complaint, resolution of this question at the pleading stage is inappropriate and she should be permitted to conduct discovery before the question is decided.

Chenette also argues that even if the remittance she made on October 14, 2014 was a payment, her civil action is not barred because the allegations in the Complaint show that she submitted an informal claim long before the deadline, namely, when she submitted her October 2014 Letter challenging the proposed assessment. As this informal claim was followed by a formal claim that remedies any formal defects or lack of specificity, Chenette argues, it was sufficient to render her civil action timely under the informal claim doctrine.

The United States did not file a response to Chenette's Opposition and the deadline for doing so has now passed.[3]

---

than a deposit. It also does not change the Court's analysis with respect to the applicability of the informal claim doctrine, discussed below. Therefore, the Court need not resolve whether the claim was filed on November 11, 2016 or November 14, 2016.
[3] The Court notes that its staff contacted counsel for the United States by telephone to inquire

6

## III. ANALYSIS

### A. Legal Standard Under Rule 12(b)(1)

Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Accordingly, "federal courts have a continuing independent obligation to determine whether subject-matter jurisdiction exists" over a given claim. *Leeson v. Transamerica Disability Income Plan*, 671 F.3d 969, 975 (9th Cir. 2012) (internal quotation marks and citations omitted). Rule 12(b)(1) allows defendants to move to dismiss a claim for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). On a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), it is the plaintiff's burden to establish the existence of subject matter jurisdiction. *Kingman Reef Atoll Invs., LLC v. United States*, 541 F.3d 1189, 1197 (9th Cir. 2008).

A party challenging the court's subject matter jurisdiction under Rule 12(b)(1) may bring a facial challenge or a factual challenge. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "If the defendant brings a facial attack, arguing that the allegations in the complaint are insufficient to demonstrate the existence of jurisdiction, the court's inquiry is much the same as when ruling on a motion to dismiss brought under Rule 12(b)(6)." *Org. for Advancement of Minorities with Disabilities v. Brick Oven Rest.*, 406 F. Supp. 2d 1120, 1124 (S.D. Cal. 2005) (citing Moore's Federal Practice § 12.30). This means the court accepts the factual allegations in the complaint as true. *Miranda v. Reno*, 238 F.3d 1156, 1157 (9th Cir. 2001). Where a defendant brings a factual challenge, on the other hand, "a court may look beyond the complaint to matters of public record without having to convert the motion into one for summary judgment." *White*, 227 F.3d at 1242 (citation omitted).

### B. Legal Standards Governing Subject Matter Jurisdiction in Tax Cases Against the United States

"Under settled principles of sovereign immunity, the United States, as sovereign, is immune from suit, save as it consents to be sued . . . and the terms of its consent to be sued in any

---

whether the United States intended to file a reply brief. Counsel confirmed that the United States did not intend to file a reply brief.

court define that court's jurisdiction to entertain the suit." *United States v. Dalm*, 494 U.S. 596, 608 (1990) (internal quotations and citations omitted). Pursuant to 28 U.S.C. § 1346(a), the United States has waived its sovereign immunity and district courts have jurisdiction over suits to recover internal revenue taxes. 28 U.S.C. § 1346(a)(1) (providing that "the district courts shall have original jurisdiction . . . of . . . "[a]ny civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws."). "However, '[n]o suit [for refund] . . . shall be maintained in any court . . . until a claim for refund or credit has been duly filed with the Secretary [of the Treasury], according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.'" *Imperial Plan, Inc. v. United States*, 95 F.3d 25, 26 (9th Cir. 1996) (quoting 26 U.S.C. § 7422(a)). In *Imperial*, the Ninth Circuit explained that "[t]o be 'duly filed,' a claim must be filed in accordance with, inter alia, the provisions of I.R.C. § 6511." *Id.* (quoting *Miller v. United States*, 38 F.3d 473 (9th Cir. 1994)). Thus, filing a timely claim is a jurisdictional prerequisite to an action for recovery of taxes paid." *Id.*

### C. Whether the Court has subject matter jurisdiction under the informal claim doctrine

In the Motion, the United States advanced a single theory in support of dismissal, namely, that Chenette's October 14, 2014 remittance was a payment and therefore, the administrative claim that she filed in November 2016 was untimely. Yet Chenette argued in her Opposition brief that even if her 2014 remittance was a payment, there is subject matter jurisdiction over her claim for a tax refund under the informal claim doctrine (an argument to which the United States did not respond). Because the Court finds that Chenette is correct, it does not address the question of whether the October 14, 2014 remittance was a payment that started the two-year limitation period under Section 6511.

Under the informal claim doctrine, an informal claim with "technical deficiencies" that is filed within the statutory period may stop the running of the statute of limitations for a refund

8

claim where it is followed by a valid refund claim filed after the statutory period has run. *Comm'r of Internal Revenue v. Ewing*, 439 F.3d 1009, 1015 (9th Cir. 2006) (citing *First Sec. Bank of Idaho, N.A. v. Comm'r*, 592 F.2d 1046, 1049 (9th Cir.1979)); *see also Weiler v. United States*, 82 F.3d 424 (9th Cir. 1996) (noting that there are "limited circumstances in which the IRS can be deemed to have waived the formal requirements of refund claims") (citing *United States v. Kales*, 314 U.S. 186 (1941), and *Angelus Milling Co. v. Commissioner*, 325 U.S. 293 (1945)). In *Ewing*, the Ninth Circuit explained that the doctrine is "concerned with claims that are 'deficient merely in one or two of the technical requirements imposed by the Treasury regulation [26 C.F.R. § 301.6402–2(b)(1)].'" *Id.* (citing *BCS Fin. Corp. v. United States*, 118 F.3d 522, 524 (7th Cir. 1997); and citing *Kaffenberger v. United States*, 314 F.3d 944, 954 (8th Cir. 2003) (citing *Kales* and stating that "the Supreme Court has endorsed informal claims filed within the statutory period that have technical deficiencies, as long as a valid refund claim is subsequently made after the period has run").

"The question whether an informal claim has been filed is largely one of fact." *Martin v. United States*, 833 F.2d 655, 661 (7th Cir. 1987) (citations omitted). "The general test is whether '[t]he Commissioner's attention should have been focused on the merits of the particular dispute' by the alleged informal claim." *Kuehn v. United States*, 480 F.2d 1319, 1320–21 (Ct. Cl. 1973) (quoting *Angelus Milling Co.*, 325 U.S. at 297); *see also Kales*, 314 U.S. 194 (holding that an informal claim must "fairly advis[e] the [IRS] Commissioner of the nature of the taxpayer's claim). In applying this test, courts consider whether the claim is "sufficient to apprise the [IRS] that a refund is being claimed," and "specifies the tax and the year or years for which the refund is being sought sufficiently so that the Service can investigate the claim." *Palomares v. Comm'r of Internal Revenue*, 691 F. App'x 858, 859 (9th Cir. 2017) (quoting Michael I. Saltzman, IRS Prac. & Proc. ¶ 11.08(2); and citing *Kales*, 314 U.S. at 194); *see also* 26 C.F.R. § 301.6402-2 (providing that a claim for a tax refund "must set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof" and further providing that "[t]he statement of the grounds and facts must be verified by a written declaration that it is made under the penalties of perjury."). The Supreme Court in *Angelus*

9

*Milling Co.* explained that "[i]t is not enough that in some roundabout way the facts supporting the claim may have reached [the IRS Commissioner]." 325 U.S. at 297.

Here, the Court finds that Chenette's October 2014 Letter is sufficient to constitute an informal claim. The IRS does not dispute that it received the letter, and Chenette's IRS Account reflecting the payment that was enclosed with the letter further supports the conclusion that it did. *See* Complaint, Ex. 1. Further, the October 2014 Letter clearly identified the tax year at issue; and in the words of the United States, it contained "a detailed explanation as to why Ms. Chenette did not agree with the proposed additions to her federal income tax liability." Motion at 2. In addition, Chenette signed the letter under penalty of perjury. Indeed, the United States has pointed to *no* deficiencies in this informal claim and does not assert that the facts contained within it were insufficient to advise the Commissioner of the nature of her claim. The Court finds that the facts contained in the October 2014 Letter *were* sufficient to apprise the Commissioner of Chenette's claim.

Of particular significance to the Court is the fact that the October 2014 Letter contained substantially the same information as the 1040x Form that she subsequently submitted in November 2016. The United States has not identified any deficiencies with the 1040x Form, treating it as a claim for a refund (albeit untimely) without making any objection to the claim as to form or content. *See* Motion to Dismiss at 3 ("On November 14, 2016, Ms. Chenette filed a Form 1040X, Amended U.S. Individual Income Tax Return, which the IRS treated as an administrative claim for refund."). Even more telling is that approximately seven months after Chenette submitted the Form 1040x, the IRS issued a notice that she was entitled to a refund of the December 8 Assessment, indicating that the explanation contained in the Form 1040x – and thus in the October 2014 Letter as well – was sufficient to apprise the IRS of the issues and allow it investigate, ultimately leading it to conclude that Chenette had correctly calculated her 2012 tax liability in her original 2012 tax return. *See* Complaint, Exs. 2 (Form 1040x), 3 (October 2014 Letter) & 4 (June 12, 2017 Notice of Refund Due).

In sum, the Court finds that Chenette timely filed an informal claim when she submitted her October 2014 Letter to the IRS and subsequently filed a valid refund claim. Therefore, under

10

the informal claim doctrine, her claim is timely and the Court has subject matter jurisdiction over this action.

## IV. CONCLUSION

For the reasons stated above, the Motion is DENIED.

**IT IS SO ORDERED.**

Dated: October 16, 2019

JOSEPH C. SPERO
Chief Magistrate Judge